## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| KASHIF MEMON, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>SPERO THERAPEUTICS, INC., ANKIT MAHADEVIA, and SATYAVRAT SHUKLA,<br><br>Defendants. | Case No.<br><br>**CLASS ACTION COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

Plaintiff Kashif Memon ("Plaintiff"), individually and on behalf of all others similarly situated, by Plaintiff's undersigned attorneys, for Plaintiff's complaint against Defendants, alleges the following based upon personal knowledge as to Plaintiff and Plaintiff's own acts, and information and belief as to all other matters, based upon, *inter alia*, the investigation conducted by and through Plaintiff's attorneys, which included, among other things, a review of the Defendants' public documents, conference calls and announcements made by Defendants, United States ("U.S.") Securities and Exchange Commission ("SEC") filings, wire and press releases published by and regarding Spero Therapeutics, Inc. ("Spero" or the "Company"), analysts' reports and advisories about the Company, and information readily obtainable on the Internet. Plaintiff believes that substantial, additional evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for discovery.

### NATURE OF THE ACTION

1. This is a federal securities class action on behalf of a class consisting of all persons and entities other than Defendants that purchased or otherwise acquired Spero securities between May 6, 2021 and May 2, 2022, both dates inclusive (the "Class Period"), seeking to recover

damages caused by Defendants' violations of the federal securities laws and to pursue remedies under Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act") and Rule 10b-5 promulgated thereunder, against the Company and certain of its top officials.

2.      Spero, a clinical-stage biopharmaceutical company, focuses on identifying, developing, and commercializing treatments for multi-drug resistant (MDR) bacterial infections and rare diseases in the United States.  The Company's product candidates include Tebipenem Pivoxil Hydrobromide (HBr), an oral carbapenem-class antibiotic to treat complicated urinary tract infections, including pyelonephritis for adults.

3.      On October 28, 2021, Spero announced that it had submitted a New Drug Application ("NDA") to the U.S. Food and Drug Administration ("FDA") for Tebipenem HBr for the Treatment of Complicated Urinary Tract Infections including Pyelonephritis (the "Tebipenem HBr NDA").

4.      Throughout the Class Period, Defendants made materially false and misleading statements regarding the Company's business, operations, and prospects.  Specifically, Defendants made false and/or misleading statements and/or failed to disclose that: (i) the data submitted in support of the Tebipenem HBr NDA were insufficient to obtain FDA approval; (ii) accordingly, it was unlikely that the FDA would approve the Tebipenem HBr NDA in its current form; (iii) the foregoing would necessitate a significant workforce reduction and restructuring of Spero's operations; and (iv) as a result, the Company's public statements were materially false and misleading at all relevant times.

5.      On March 31, 2022, Spero issued a press release announcing the Company's fourth quarter and full year 2021 financial results.  In the press release, Spero disclosed that "[t]he U.S. Food and Drug Administration (FDA) has notified Spero that, as part of its ongoing review of

2

Spero's New Drug Application (NDA) for tebipenem HBr, it has identified deficiencies that preclude discussion of labeling and post-marketing requirements/commitments at this time."

6.    On this news, Spero's stock price fell $1.59 per share, or 18.27%, to close at $7.11 per share on April 1, 2022.

7.    Then on May 3, 2022, Spero issued a press release announcing "that it will immediately defer current commercialization activities for tebipenem HBr based on feedback from a recent Late Cycle Meeting (LCM) with the U.S. Food and Drug Administration (FDA) regarding Spero's New Drug Application (NDA) for tebipenem HBr[,]" and that, "[a]lthough the review is still ongoing and the FDA has not yet made any final determination regarding approvability, the discussion suggested that the data package may be insufficient to support approval during this review cycle."  Specifically, the FDA advised the Company, in relevant part, that the FDA's separate analysis of the relevant study population had "reduce[d] the number of evaluable patients in the primary analysis population compared with those resulting from the trial's pre-specified micro-ITT population as outlined in the statistical analysis plan" and [a]s a result, the FDA considers that the pre-specified non-inferiority margin of -12.5% was not met."  Further, the press release advised that, "[i]n connection with this development, Spero announced that it is undertaking a reduction in its workforce by approximately 75% and a restructuring of its operations to reduce operating costs and reallocate resources."

8.    On this news, Spero's stock price fell $3.24 per share, or 63.65%, to close at $1.85 per share on May 3, 2022.

9.    As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's securities, Plaintiff and other Class members have suffered significant losses and damages.

## JURISDICTION AND VENUE

10.    The claims asserted herein arise under and pursuant to Sections 10(b) and 20(a) of the Exchange Act (15 U.S.C. §§ 78j(b) and 78t(a)) and Rule 10b-5 promulgated thereunder by the SEC (17 C.F.R. § 240.10b-5).

11.    This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331 and Section 27 of the Exchange Act.

12.    Venue is proper in this Judicial District pursuant to Section 27 of the Exchange Act (15 U.S.C. § 78aa) and 28 U.S.C. § 1391(b) as the alleged misstatements entered and subsequent damages took place in this Judicial District.  Pursuant to Spero's most recently filed Quarterly Report with the SEC, as of May 12, 2022, there were 32,821,544 shares of the Company's common stock outstanding.  Spero's securities trade on the Nasdaq Global Select Market ("NASDAQ"). Accordingly, there are presumably hundreds, if not thousands, of investors in Spero securities located within the U.S., some of whom undoubtedly reside in this Judicial District.

13.    In connection with the acts alleged in this complaint, Defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including, but not limited to, the mails, interstate telephone communications, and the facilities of the national securities markets.

## PARTIES

14.    Plaintiff, as set forth in the attached Certification, acquired the Company's securities at artificially inflated prices during the Class Period and was damaged upon the revelation of the alleged corrective disclosures.

15.     Defendant Spero is a Delaware corporation with principal executive offices located at 675 Massachusetts Avenue, 14th Floor, Cambridge, Massachusetts 02139.  Spero's securities trades on the NASDAQ under the symbol "SPRO."

16.     Defendant Ankit Mahadevia ("Mahadevia") has served as the Company's Chief Executive Officer at all relevant times.

17.     Defendant Satyavrat Shukla ("Shukla") served as the Company's Chief Financial Officer at all relevant times.

18.     Defendants Mahadevia and Shukla are sometimes referred to herein as the "Individual Defendants."

19.     The Individual Defendants possessed the power and authority to control the contents of Spero's SEC filings, press releases, and other market communications.  The Individual Defendants were provided with copies of Spero's SEC filings and press releases alleged herein to be misleading prior to or shortly after their issuance and had the ability and opportunity to prevent their issuance or to cause them to be corrected.  Because of their positions with Spero, and their access to material information available to them but not to the public, the Individual Defendants knew that the adverse facts specified herein had not been disclosed to and were being concealed from the public, and that the positive representations being made were then materially false and misleading.  The Individual Defendants are liable for the false statements and omissions pleaded herein.

20.     Spero and the Individual Defendants are collectively referred to herein as "Defendants."

## SUBSTANTIVE ALLEGATIONS

### Background

21.    Spero, a clinical-stage biopharmaceutical company, focuses on identifying, developing, and commercializing treatments for multi-drug resistant (MDR) bacterial infections and rare diseases in the United States.  The Company's product candidates include Tebipenem Pivoxil Hydrobromide (HBr), an oral carbapenem-class antibiotic to treat complicated urinary tract infections, including pyelonephritis for adults.

22.    On October 28, 2021, Spero announced that it had submitted the Tebipenem HBr NDA to the FDA.

### Materially False and Misleading Statements Issued During the Class Period

23.    The Class Period begins on May 6, 2021, when Spero issued a press release announcing the Company's Q1 2021 operating results and providing a business update.  The press release stated, in relevant part:

> "We are off to a strong start in 2021 and I am very pleased with the progress we have made across our pipeline," said Ankit Mahadevia, M.D., Chief Executive Officer of Spero Therapeutics. "We recently completed a pre-NDA meeting for tebipenem HBr with the FDA and received feedback indicating that the format and content of the planned data package we intend to include in our NDA will be sufficient to support the submission. This regulatory milestone keeps us on track to submit the NDA in the second half of the year as we work to transition to a commercial-stage organization. Our Phase 3 ADAPT-PO data indicate that, if approved, tebipenem HBr may provide many of the over 2 million cUTI and acute pyelonephritis patients who would typically receive IV therapy the convenience of an oral treatment with comparable efficacy and safety. Replacing IV therapy with an oral option may help avoid unnecessary hospitalizations, delivering substantial value to payers, physicians, and most importantly, patients."

> **Clinical Highlights and Upcoming Milestones**

> **Tebipenem HBr:**
> Spero's lead product candidate, tebipenem HBr, has the potential to be the first oral carbapenem antibiotic, if approved, to treat complicated urinary tract infection (cUTI), including acute pyelonephritis (AP). In September 2020, Spero announced

positive data from the Phase 3 ADAPT-PO trial showing that oral tebipenem HBr was statistically non-inferior to intravenous ertapenem in the treatment of patients with cUTI and patients with AP.

In March 2021, Spero successfully completed a pre-new drug application (NDA) meeting with the United States Food and Drug Administration (FDA). The purpose of the meeting was to discuss the format and content of Spero's planned NDA submission. Subject to FDA's review of the full submission, Spero and the FDA achieved consensus that the NDA package as described during the course of the meeting would allow for FDA review, consistent with Spero's expectations. Spero remains on track to make the NDA submission to the FDA in the second half of 2021.

24.     On August 5, 2021, Spero issued a press release announcing the Company's Q2 2021 operating results and providing a business update. The press release stated, in relevant part:

"During the second quarter, we achieved key milestones which has us well positioned for future success, as we work to submit the tebipenem HBr NDA, transition to a commercial organization, and advance our clinical-stage pipeline," said Ankit Mahadevia, M.D., Chief Executive Officer of Spero Therapeutics. "These accomplishments were bolstered by the recent $40 million equity investment from Pfizer Inc., along with their licensing agreement for SPR206. These agreements provide important external validation for our broader corporate strategy and demonstrate the depth and value of our early-stage programs."

Dr. Mahadevia continued, "Looking forward, our primary focus is to advance tebipenem HBr towards an NDA filing this year, which moves us closer to providing an oral treatment for potentially millions of patients with complicated urinary tract infections. We expect these activities, together with the advancement of our pipeline programs, to drive sustainable growth in our mission to address crucial unmet medical needs."

25.     On October 28, 2021, Spero issued a press release entitled "Spero Therapeutics Submits New Drug Application to U.S. FDA for Tebipenem HBr for the Treatment of Complicated Urinary Tract Infections including Pyelonephritis." The press release stated, in relevant part:

Spero [. . .] today announced the submission of a new drug application (NDA) to the U.S. Food and Drug Administration (FDA), seeking approval for tebipenem HBr tablets for the treatment of complicated urinary tract infections (cUTI), including pyelonephritis, caused by susceptible microorganisms. If approved, tebipenem HBr would be the only oral carbapenem antibiotic available for use in cUTI.

"With the submission of this NDA, we have taken a major step towards potentially providing a substantial number of appropriate cUTI patients with an oral treatment option that could replace historical use of intravenous (IV) therapy," said Ankit Mahadevia, M.D., Chief Executive Officer of Spero Therapeutics. "If approved, we believe tebipenem HBr could help patients significantly, and the avoidance of IV administration could lead to reduced healthcare resource utilization. We look forward to working with the FDA during the NDA review process as we prepare for tebipenem HBr's anticipated launch in the second half of 2022."

The NDA submission includes previously communicated positive data from the Phase 3 ADAPT-PO trial. This data showed that ADAPT-PO met its primary endpoint by demonstrating that oral tebipenem HBr was statistically non-inferior to IV ertapenem in the treatment of patients with cUTI and patients with acute pyelonephritis (AP).

26.     On November 10, 2021, Spero issued a press release announcing the Company's

Q3 2021 operating results and providing a business update.  The press release stated, in relevant

part:

"During the quarter, we strengthened both our leadership team and financial position, while moving tebipenem HBr closer to a point where cUTI patients may soon have a solution to their existing unmet need," said Ankit Mahadevia, M.D., Chief Executive Officer of Spero Therapeutics. "Chief among these accomplishments was our recent NDA submission for tebipenem HBr, which, if approved, would make it the first oral carbapenem antibiotic available for use in cUTI.["]

***

**Clinical Highlights and Upcoming Milestones**

**Tebipenem HBr:**

In October 2021, Spero submitted a new drug application (NDA) to the United States Food and Drug Administration (FDA), seeking approval for tebipenem HBr tablets for the treatment of complicated urinary tract infections (cUTI), including pyelonephritis, caused by susceptible microorganisms. The NDA submission includes previously communicated positive data from ADAPT-PO showing the Phase 3 trial met its primary endpoint by demonstrating that oral tebipenem HBr was statistically non-inferior to intravenous (IV) ertapenem in the treatment of patients with cUTI and patients with acute pyelonephritis (AP). If approved, tebipenem HBr would be the only oral carbapenem antibiotic available for use in cUTI.

The Company expects a commercial launch for tebipenem HBr in the second half of 2022, subject to its approval by the FDA.

27.    That same day, Spero hosted an earnings call with investors and analysts to discuss the Company's Q3 2021 results (the "Q3 2021 Earnings Call").  During the scripted portion of the Q3 2021 Earnings Call, Defendant Mahadevia stated, in relevant part:

Spero's primary focus remains on preparing for an anticipated tebipenem HBr commercial launch in the second half of 2022. And I'm pleased to say that, over the past months, we've achieved key milestones to advance our efforts towards this important goal.

Chief among these milestones was our recent submission of an NDA package, seeking approval for tebipenem HBr tablets for the treatment of complicated urinary tract infections, including pyelonephritis caused by susceptible microorganisms. A key part of this NDA package is the positive data set from our Phase III ADAPT-PO clinical trial. These data showed that, ADAPT-PO met its primary endpoint by demonstrating within an all-oral regimen of tebipenem HBr, was non-inferior to an all-IV regimen of ertapenem for the treatment of complicated urinary tract infection or cUTI and acute pyelonephritis or AP.

Previous FDA interactions and written communications support our efforts to advance tebipenem HBr towards commercialization. They indicate the positive results from single well-controlled pivotal trials such as ADAPT-PO, could be sufficient to support the approval of an NDA for tebipenem HBr in the treatment of cUTI, including pyelonephritis.

Further, through a pre-NDA meeting, the FDA also previously endorsed the structure in the form of our recent NDA submission. The agency indicated that, the data set and CMC plan that are now included in the package meet FDA submission standards. Given our submission date of 27 October, we anticipate that, if FDA's initial two-month review during this filing period is successful, the formal NDA review clock will start at the end of the year with a PDUFA date six months from that point or in mid-2022.

28.    On January 3, 2022, Spero issued a press release entitled "Spero Therapeutics Announces FDA Acceptance and Priority Review of New Drug Application for Tebipenem HBr for the Treatment of Complicated Urinary Tract Infections including Pyelonephritis."  The press release stated, in relevant part:

Spero [. . .] today announced that the U.S. Food and Drug Administration (FDA) has granted Priority Review designation and confirmed the acceptance for substantive review of the New Drug Application (NDA) seeking approval for tebipenem HBr oral tablets for treatment in adult patients with complicated urinary tract infections (cUTI), including acute pyelonephritis, caused by susceptible microorganisms. Tebipenem HBr has been granted Qualified Infectious Disease Product (QIDP), Fast Track, and Priority Review designations for these cUTI indications. The Agency is planning to hold an Advisory Committee meeting to discuss this application and has also set a Prescription Drug User Fee Act (PDUFA) target action date of June 27, 2022.

"The FDA acceptance of this NDA is a major step forward in our mission to provide patients the first and only oral carbapenem antibiotic to treat cUTI. If approved, tebipenem HBr may provide patients an oral treatment option, allowing them to potentially either recover at home from their infections or leave the hospital sooner," said Ankit Mahadevia, M.D., Chief Executive Officer of Spero. "This is an important accomplishment and an exciting moment for all of us at Spero, as we execute our plan on becoming a commercial organization. We are committed to working closely with the FDA throughout the NDA review process and look forward to tebipenem HBr's anticipated launch in the second half of 2022."

The NDA submission includes previously communicated positive data from the Phase 3 ADAPT-PO trial. These data showed that ADAPT-PO met its primary endpoint by demonstrating that oral tebipenem HBr was statistically non-inferior to intravenous (IV) ertapenem in the treatment of patients with cUTI and patients with acute pyelonephritis (AP).

David Melnick, M.D., Chief Medical Officer of Spero, added, "ADAPT-PO was rigorously designed both to support this NDA and to provide physicians with the confidence needed to prescribe oral tebipenem HBr to appropriate patients in place of IV therapy, if approved. We believe the positive results from the trial have allowed us to accomplish this first goal and indicate that use of tebipenem HBr may ultimately improve patient care and reduce healthcare resource utilization in cUTI."

29.    The statements referenced in ¶¶ 23-28 were materially false and misleading because Defendants made false and/or misleading statements, as well as failed to disclose material adverse facts about the Company's business, operations, and prospects.  Specifically, Defendants made false and/or misleading statements and/or failed to disclose: (i) the data submitted in support of the Tebipenem HBr NDA were insufficient to obtain FDA approval; (ii) accordingly, it was unlikely that the FDA would approve the Tebipenem HBr NDA in its current form; (iii) the

foregoing would necessitate a significant workforce reduction and restructuring of Spero's operations; and (iv) as a result, the Company's public statements were materially false and misleading at all relevant times.

**The Truth Begins to Emerge**

30.    On March 31, 2022, Spero issued a press release announcing the Company's fourth quarter and full year 2021 financial results and providing an update regarding the Tebipenem HBr NDA.  Specifically, the press release stated, in relevant part:

> The U.S. Food and Drug Administration (FDA) has notified Spero that, as part of its ongoing review of Spero's New Drug Application (NDA) for tebipenem HBr, it has identified deficiencies that preclude discussion of labeling and post-marketing requirements/commitments at this time. The FDA stated that the notification does not reflect a final decision on the information under review. Spero intends to work with the FDA to seek to resolve the deficiencies expeditiously.
>
> The FDA previously assigned a Prescription Drug User Fee Act (PDUFA) goal action date of June 27, 2022, for completion of its review of the NDA, and initially targeted the midpoint of that review period to communicate proposed labeling and, if necessary, any post-marketing requirement and/or commitment requests to Spero. The Company noted that there are three months remaining before the PDUFA goal action date. Spero also has a late cycle review meeting scheduled with the FDA and expects to provide an update on or before its next earnings call in May 2022.
>
> "We continue to have an active dialogue with the FDA," said Ankit Mahadevia, M.D., Chief Executive Officer of Spero. "We are focused on doing everything we can to address the deficiencies and, given how early in the review period the labeling discussions were originally scheduled, we believe there would be sufficient time to progress to labeling discussions within the existing PDUFA timeframe. However, we do not yet know the effect of this notification, if any, on our anticipated timelines or on the ultimate approval prospects of tebipenem HBr. We continue to prepare for an anticipated commercial launch of tebipenem HBr in the second half of 2022, as we work with the FDA. If approved by the FDA, we believe tebipenem HBr may offer healthcare providers, payers and patients an important oral antibiotic alternative to IV treatment for cUTI for patients with limited oral treatment options."

31.    On this news, Spero's stock price fell $1.59 per share, or 18.27%, to close at $7.11 per share on April 1, 2022.

## The Truth Fully Emerges

32.     On May 3, 2022, Spero issued a press release entitled "Spero Therapeutics Announces New Strategic Direction Focusing on Advancing Promising Clinical-Stage Pipeline." The press release stated, in relevant part:

> Spero [. . .] today announced that it will immediately defer current commercialization activities for tebipenem HBr based on feedback from a recent Late Cycle Meeting (LCM) with the U.S. Food and Drug Administration (FDA) regarding Spero's New Drug Application (NDA) for tebipenem HBr. Although the review is still ongoing and the FDA has not yet made any final determination regarding approvability, the discussion suggested that the data package may be insufficient to support approval during this review cycle, as described below.
>
> In connection with this development, Spero announced that it is undertaking a reduction in its workforce by approximately 75% and a restructuring of its operations to reduce operating costs and reallocate resources towards the clinical development programs of SPR720 and SPR206, while continuing engagement with the FDA on the appropriate path forward for tebipenem HBr. Based on the anticipated cost-savings of this restructuring and other assumptions, Spero anticipates it will be able to fund its planned operating expenses and capital expenditure requirements pursuant to the priorities of its strategic refocusing through late 2023.
>
> "We are disappointed that the FDA has identified substantive review issues, and we strongly believe that tebipenem HBr would offer healthcare providers, payers and patients an important oral antibiotic alternative to IV treatment for cUTI for patients with limited oral treatment options," said Ankit Mahadevia, M.D., Chief Executive Officer of Spero Therapeutics. "After careful consideration, and in light of the current FDA position, we have made the strategic decision to transition Spero's focus and resources to supporting the clinical development of our promising clinical-stage pipeline, including SPR720, aimed at treating non-tuberculous mycobacterial lung disease, and SPR206, aimed at treating MDR gram-negative bacterial infections. Further, we will continue to engage with the FDA on the appropriate path forward for tebipenem HBr. As a result, Spero will immediately refrain from investment in near-term commercialization activities for tebipenem HBr, and instead we will restructure our business to appropriately staff our new focus going forward. We believe these actions will help preserve the ongoing viability of tebipenem HBr's development program, enabling either eventual commercialization by Spero, or commercialization through potential partnership or other opportunities."
>
> Dr. Mahadevia continued, "While this decision was difficult, we believe it is in the best interest of the company and its shareholders. The need for antibiotic resistance solutions is more pressing than ever before, and both SPR720 and SPR206 are in

clinical development stages and have shown promising results to date. SPR720's Phase 2 clinical hold was recently lifted, enabling its continued development as an oral therapy for non-tuberculosis mycobacterial infection, a debilitating, chronic disease. We are also very pleased with the ongoing development of SPR206 as a treatment for MDR gram-negative lung infections. Finally, we believe in the long-term potential of tebipenem HBr for patients with cUTI and look forward to engaging the FDA on the best path forward to approval."

"Spero is powered by incredibly hard-working and dedicated professionals who have made significant strides over the past year to bring the medicines in our pipeline forward and closer to patients. I would like to offer my heartfelt thanks to all our employees, especially those affected by today's announcement, for their contributions to Spero. We are committed to treating all impacted team members with fairness and respect, consistent with our culture, and to supporting them through this transition," concluded Dr. Mahadevia.

Tebipenem HBr has been granted Qualified Infectious Disease Product (QIDP), Fast Track and Priority Review designations for treatment of complicated urinary tract infection (cUTI), including acute pyelonephritis. The FDA set a Prescription Drug User Fee Act (PDUFA) target action date for June 27, 2022. On March 31, 2022, Spero announced that as part of the FDA's ongoing review of Spero's NDA for tebipenem HBr, the FDA had identified deficiencies that precluded the discussion of labeling and post-marketing requirements/commitments at such time. Spero's LCM with the FDA was in late April 2022.

In evaluating the efficacy of tebipenem HBr in the Phase 3 (ADAPT-PO) cUTI study, the FDA conducted a separate analysis of the microbiological intent-to-treat (micro-ITT) population, relative to the prespecified analysis as set forth in the previously submitted and reviewed protocol and statistical analysis plan for ADAPT-PO. The effect of this new analysis was to reduce the number of evaluable patients in the primary analysis population compared with those resulting from the trial's pre-specified micro-ITT population as outlined in the statistical analysis plan. As a result, the FDA considers that the pre-specified non-inferiority (NI) margin of -12.5% was not met.   Spero is continuing its dialogue with the FDA, as the company seeks a pathway forward for potential approval of tebipenem HBr.

33.     On this news, Spero's stock price fell $3.24 per share, or 63.65%, to close at $1.85 per share on May 3, 2022.

34.     As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's securities, Plaintiff and other Class members have suffered significant losses and damages.

## PLAINTIFF'S CLASS ACTION ALLEGATIONS

35.     Plaintiff brings this action as a class action pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3) on behalf of a Class, consisting of all those who purchased or otherwise acquired Spero securities during the Class Period (the "Class"); and were damaged upon the revelation of the alleged corrective disclosures.  Excluded from the Class are Defendants herein, the officers and directors of the Company, at all relevant times, members of their immediate families and their legal representatives, heirs, successors or assigns and any entity in which Defendants have or had a controlling interest.

36.     The members of the Class are so numerous that joinder of all members is impracticable.  Throughout the Class Period, Spero securities were actively traded on the NASDAQ.  While the exact number of Class members is unknown to Plaintiff at this time and can be ascertained only through appropriate discovery, Plaintiff believes that there are hundreds or thousands of members in the proposed Class.  Record owners and other members of the Class may be identified from records maintained by Spero or its transfer agent and may be notified of the pendency of this action by mail, using the form of notice similar to that customarily used in securities class actions.

37.     Plaintiff's claims are typical of the claims of the members of the Class as all members of the Class are similarly affected by Defendants' wrongful conduct in violation of federal law that is complained of herein.

38.     Plaintiff will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in class and securities litigation.  Plaintiff has no interests antagonistic to or in conflict with those of the Class.

39.     Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class.  Among the questions of law and fact common to the Class are:

- whether the federal securities laws were violated by Defendants' acts as alleged herein;

- whether statements made by Defendants to the investing public during the Class Period misrepresented material facts about the business, operations and management of Spero;

- whether the Individual Defendants caused Spero to issue false and misleading financial statements during the Class Period;

- whether Defendants acted knowingly or recklessly in issuing false and misleading financial statements;

- whether the prices of Spero securities during the Class Period were artificially inflated because of the Defendants' conduct complained of herein; and

- whether the members of the Class have sustained damages and, if so, what is the proper measure of damages.

40.     A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable.  Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation make it impossible for members of the Class to individually redress the wrongs done to them.  There will be no difficulty in the management of this action as a class action.

41.     Plaintiff will rely, in part, upon the presumption of reliance established by the fraud-on-the-market doctrine in that:

- Defendants made public misrepresentations or failed to disclose material facts during the Class Period;

- the omissions and misrepresentations were material;

- Spero securities are traded in an efficient market;

15

- the Company's shares were liquid and traded with moderate to heavy volume during the Class Period;

- the Company traded on the NASDAQ and was covered by multiple analysts;

- the misrepresentations and omissions alleged would tend to induce a reasonable investor to misjudge the value of the Company's securities; and

- Plaintiff and members of the Class purchased, acquired and/or sold Spero securities between the time the Defendants failed to disclose or misrepresented material facts and the time the true facts were disclosed, without knowledge of the omitted or misrepresented facts.

42.    Based upon the foregoing, Plaintiff and the members of the Class are entitled to a presumption of reliance upon the integrity of the market.

43.    Alternatively, Plaintiff and the members of the Class are entitled to the presumption of reliance established by the Supreme Court in *Affiliated Ute Citizens of the State of Utah v. United States*, 406 U.S. 128, 92 S. Ct. 2430 (1972), as Defendants omitted material information in their Class Period statements in violation of a duty to disclose such information, as detailed above.

## **COUNT I**

### **(Violations of Section 10(b) of the Exchange Act and Rule 10b-5 Promulgated Thereunder Against All Defendants)**

44.    Plaintiff repeats and re-alleges each and every allegation contained above as if fully set forth herein.

45.    This Count is asserted against Defendants and is based upon Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b), and Rule 10b-5 promulgated thereunder by the SEC.

46.    During the Class Period, Defendants engaged in a plan, scheme, conspiracy and course of conduct, pursuant to which they knowingly or recklessly engaged in acts, transactions, practices and courses of business which operated as a fraud and deceit upon Plaintiff and the other members of the Class; made various untrue statements of material facts and omitted to state material facts necessary in order to make the statements made, in light of the circumstances under

which they were made, not misleading; and employed devices, schemes and artifices to defraud in connection with the purchase and sale of securities. Such scheme was intended to, and, throughout the Class Period, did: (i) deceive the investing public, including Plaintiff and other Class members, as alleged herein; (ii) artificially inflate and maintain the market price of Spero securities; and (iii) cause Plaintiff and other members of the Class to purchase or otherwise acquire Spero securities and options at artificially inflated prices. In furtherance of this unlawful scheme, plan and course of conduct, Defendants, and each of them, took the actions set forth herein.

47.     Pursuant to the above plan, scheme, conspiracy and course of conduct, each of the Defendants participated directly or indirectly in the preparation and/or issuance of the quarterly and annual reports, SEC filings, press releases and other statements and documents described above, including statements made to securities analysts and the media that were designed to influence the market for Spero securities. Such reports, filings, releases and statements were materially false and misleading in that they failed to disclose material adverse information and misrepresented the truth about Spero's finances and business prospects.

48.     By virtue of their positions at Spero, Defendants had actual knowledge of the materially false and misleading statements and material omissions alleged herein and intended thereby to deceive Plaintiff and the other members of the Class, or, in the alternative, Defendants acted with reckless disregard for the truth in that they failed or refused to ascertain and disclose such facts as would reveal the materially false and misleading nature of the statements made, although such facts were readily available to Defendants. Said acts and omissions of Defendants were committed willfully or with reckless disregard for the truth. In addition, each Defendant knew or recklessly disregarded that material facts were being misrepresented or omitted as described above.

49.     Information showing that Defendants acted knowingly or with reckless disregard for the truth is peculiarly within Defendants' knowledge and control.  As the senior managers and/or directors of Spero, the Individual Defendants had knowledge of the details of Spero's internal affairs.

50.     The Individual Defendants are liable both directly and indirectly for the wrongs complained of herein.  Because of their positions of control and authority, the Individual Defendants were able to and did, directly or indirectly, control the content of the statements of Spero.  As officers and/or directors of a publicly-held company, the Individual Defendants had a duty to disseminate timely, accurate, and truthful information with respect to Spero's businesses, operations, future financial condition and future prospects.  As a result of the dissemination of the aforementioned false and misleading reports, releases and public statements, the market price of Spero securities was artificially inflated throughout the Class Period.  In ignorance of the adverse facts concerning Spero's business and financial condition which were concealed by Defendants, Plaintiff and the other members of the Class purchased or otherwise acquired Spero securities at artificially inflated prices and relied upon the price of the securities, the integrity of the market for the securities and/or upon statements disseminated by Defendants, and were damaged thereby.

51.     During the Class Period, Spero securities were traded on an active and efficient market.  Plaintiff and the other members of the Class, relying on the materially false and misleading statements described herein, which the Defendants made, issued or caused to be disseminated, or relying upon the integrity of the market, purchased or otherwise acquired shares of Spero securities at prices artificially inflated by Defendants' wrongful conduct.  Had Plaintiff and the other members of the Class known the truth, they would not have purchased or otherwise acquired said securities, or would not have purchased or otherwise acquired them at the inflated prices that were

paid.  At the time of the purchases and/or acquisitions by Plaintiff and the Class, the true value of Spero securities was substantially lower than the prices paid by Plaintiff and the other members of the Class.  The market price of Spero securities declined sharply upon public disclosure of the facts alleged herein to the injury of Plaintiff and Class members.

52.     By reason of the conduct alleged herein, Defendants knowingly or recklessly, directly or indirectly, have violated Section 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder.

53.     As a direct and proximate result of Defendants' wrongful conduct, Plaintiff and the other members of the Class suffered damages in connection with their respective purchases, acquisitions and sales of the Company's securities during the Class Period, upon the disclosure that the Company had been disseminating misrepresented financial statements to the investing public.

## COUNT II

**(Violations of Section 20(a) of the Exchange Act Against the Individual Defendants)**

54.     Plaintiff repeats and re-alleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

55.     During the Class Period, the Individual Defendants participated in the operation and management of Spero, and conducted and participated, directly and indirectly, in the conduct of Spero's business affairs.  Because of their senior positions, they knew the adverse non-public information about Spero's misstatement of income and expenses and false financial statements.

56.     As officers and/or directors of a publicly owned company, the Individual Defendants had a duty to disseminate accurate and truthful information with respect to Spero's

financial condition and results of operations, and to correct promptly any public statements issued by Spero which had become materially false or misleading.

57.     Because of their positions of control and authority as senior officers, the Individual Defendants were able to, and did, control the contents of the various reports, press releases and public filings which Spero disseminated in the marketplace during the Class Period concerning Spero's results of operations.  Throughout the Class Period, the Individual Defendants exercised their power and authority to cause Spero to engage in the wrongful acts complained of herein. The Individual Defendants, therefore, were "controlling persons" of Spero within the meaning of Section 20(a) of the Exchange Act.  In this capacity, they participated in the unlawful conduct alleged which artificially inflated the market price of Spero securities.

58.     Each of the Individual Defendants, therefore, acted as a controlling person of Spero. By reason of their senior management positions and/or being directors of Spero, each of the Individual Defendants had the power to direct the actions of, and exercised the same to cause, Spero to engage in the unlawful acts and conduct complained of herein.  Each of the Individual Defendants exercised control over the general operations of Spero and possessed the power to control the specific activities which comprise the primary violations about which Plaintiff and the other members of the Class complain.

59.     By reason of the above conduct, the Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act for the violations committed by Spero.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff demands judgment against Defendants as follows:

A.     Determining that the instant action may be maintained as a class action under Rule 23 of the Federal Rules of Civil Procedure, and certifying Plaintiff as the Class representative;

B.      Requiring Defendants to pay damages sustained by Plaintiff and the Class by reason of the acts and transactions alleged herein;

C.      Awarding Plaintiff and the other members of the Class prejudgment and post-judgment interest, as well as their reasonable attorneys' fees, expert fees and other costs; and

D.      Awarding such other and further relief as this Court may deem just and proper.

## DEMAND FOR TRIAL BY JURY

Plaintiff hereby demands a trial by jury.

Dated:  July 15, 2022                    Respectfully submitted,

                                         POMERANTZ LLP

                                         */s/ Jeremy A. Lieberman*
                                         Jeremy A. Lieberman
                                         J. Alexander Hood II
                                         Thomas H. Przybylowski
                                         600 Third Avenue
                                         New York, New York 10016
                                         Telephone: (212) 661-1100
                                         Facsimile: (917) 463-1044
                                         jalieberman@pomlaw.com
                                         ahood@pomlaw.com
                                         tprzybylowski@pomlaw.com

                                         THE SCHALL FIRM
                                         Brian Schall
                                         (*pro hac vice* application forthcoming)
                                         2049 Century Park East, Ste. 2460
                                         Los Angeles, CA 90067
                                         Telephone: 310-301-3335
                                         brian@schallfirm.com

                                         *Attorneys for Plaintiff*

DocuSign Envelope ID: 336923C0-B314-4C22-ACCB-03DBE8AA9AEF

## CERTIFICATION PURSUANT
## TO FEDERAL SECURITIES LAWS

1.      I, Kashif Memon, make this declaration pursuant to Section 27(a)(2) of the Securities Act of 1933 ("Securities Act") and/or Section 21D(a)(2) of the Securities Exchange Act of 1934 ("Exchange Act") as amended by the Private Securities Litigation Reform Act of 1995.

2.      I have reviewed a Complaint against Spero Therapeutics, Inc. ("Spero" or the "Company") and authorize the filing of a comparable complaint on my behalf.

3.      I did not purchase or acquire Spero securities at the direction of plaintiffs' counsel or in order to participate in any private action arising under the Securities Act or Exchange Act.

4.      I am willing to serve as a representative party on behalf of a Class of investors who purchased or otherwise acquired Spero securities during the class period, including providing testimony at deposition and trial, if necessary.  I understand that the Court has the authority to select the most adequate lead plaintiff in this action.

5.      The attached sheet lists all of my transactions in Spero securities during the Class Period as specified in the Complaint.

6.      During the three-year period preceding the date on which this Certification is signed, I have not served or sought to serve as a representative party on behalf of a class under the federal securities laws.

7.      I agree not to accept any payment for serving as a representative party on behalf of the class as set forth in the Complaint, beyond my pro rata share of any recovery, except such reasonable costs and expenses directly relating to the representation of the class as ordered or approved by the Court.

8.      I declare under penalty of perjury under the laws of the United States of America

that the foregoing is true and correct.

**Executed** _____
7/13/2022
            **(Date)**

DocuSigned by:

_kashif Memon_
_____
8382555018124D8...

**Kashif Memon**

Spero Therapeutics, Inc. (SPRO)                                        Kashif Memon

### List of Purchases and Sales

| Transaction Type | Date | Number of Shares/Unit | Price Per Share/Unit |
|---|---|---|---|
| Purchase | 6/18/2021 | 300 | $14.8417 |
| Purchase | 6/21/2021 | 380 | $14.2372 |
| Purchase | 6/22/2021 | 100 | $13.8500 |
| Purchase | 6/29/2021 | 1,000 | $14.0000 |
| Purchase | 6/30/2021 | 10 | $19.4000 |
| Purchase | 6/30/2021 | 402 | $19.4400 |
| Purchase | 6/30/2021 | 468 | $16.5000 |
| Purchase | 6/30/2021 | 480 | $17.4500 |
| Purchase | 6/30/2021 | 520 | $17.2000 |
| Purchase | 6/30/2021 | 588 | $19.1000 |
| Purchase | 7/1/2021 | 100 | $15.7700 |
| Purchase | 7/1/2021 | 100 | $15.9446 |
| Purchase | 7/1/2021 | 100 | $15.9899 |
| Purchase | 7/1/2021 | 100 | $16.7700 |
| Purchase | 7/1/2021 | 1,000 | $17.0000 |
| Purchase | 7/1/2021 | 1,000 | $17.5000 |
| Purchase | 7/1/2021 | 1,000 | $17.5500 |
| Purchase | 7/1/2021 | 200 | $15.6800 |
| Purchase | 7/1/2021 | 200 | $15.8500 |
| Purchase | 7/1/2021 | 200 | $15.9600 |
| Purchase | 7/1/2021 | 300 | $15.6000 |
| Purchase | 7/1/2021 | 300 | $15.9399 |
| Purchase | 7/1/2021 | 50 | $16.7300 |
| Purchase | 7/1/2021 | 50 | $16.7600 |
| Purchase | 7/1/2021 | 70 | $16.8100 |
| Purchase | 7/1/2021 | 730 | $16.8500 |
| Purchase | 7/2/2021 | 100 | $15.8276 |
| Purchase | 7/2/2021 | 300 | $15.8500 |
| Purchase | 7/2/2021 | 300 | $15.9000 |
| Purchase | 7/2/2021 | 400 | $15.7900 |
| Purchase | 7/6/2021 | 200 | $15.2000 |
| Purchase | 7/6/2021 | 300 | $15.3000 |
| Purchase | 7/6/2021 | 500 | $15.2000 |
| Purchase | 7/7/2021 | 100 | $14.9100 |
| Purchase | 7/7/2021 | 400 | $15.0100 |
| Purchase | 7/12/2021 | 200 | $14.9500 |
| Purchase | 7/13/2021 | 100 | $14.2200 |
| Purchase | 7/13/2021 | 200 | $14.3599 |
| Purchase | 7/15/2021 | 200 | $14.1200 |
| Purchase | 7/30/2021 | 100 | $13.3300 |
| Purchase | 8/16/2021 | 100 | $13.1092 |
| Purchase | 8/19/2021 | 200 | $13.3000 |
| Purchase | 9/1/2021 | 200 | $17.3800 |
| Purchase | 9/1/2021 | 200 | $17.6199 |
| Purchase | 9/3/2021 | 100 | $17.6799 |
| Purchase | 9/3/2021 | 100 | $17.6800 |
| Purchase | 9/3/2021 | 100 | $17.6900 |
| Purchase | 9/3/2021 | 100 | $17.7999 |
| Purchase | 9/3/2021 | 100 | $17.8000 |
| Purchase | 9/3/2021 | 100 | $18.1100 |

Spero Therapeutics, Inc. (SPRO)                                    Kashif Memon

### List of Purchases and Sales

| Transaction Type | Date | Number of Shares/Unit | Price Per Share/Unit |
|---|---|---|---|
| Purchase | 9/3/2021 | 200 | $17.8627 |
| Purchase | 9/3/2021 | 300 | $17.6800 |
| Purchase | 9/9/2021 | 2,000 | $18.6000 |
| Purchase | 9/9/2021 | 440 | $18.6477 |
| Purchase | 9/9/2021 | 494 | $18.6500 |
| Purchase | 9/9/2021 | 66 | $18.6050 |
| Purchase | 9/13/2021 | 1,000 | $18.5676 |
| Purchase | 9/13/2021 | 500 | $18.6299 |
| Purchase | 9/15/2021 | 1,000 | $18.5400 |
| Purchase | 9/15/2021 | 1,000 | $18.5468 |
| Purchase | 9/16/2021 | 1,000 | $18.7000 |
| Purchase | 9/20/2021 | 1,000 | $18.5500 |
| Purchase | 9/20/2021 | 500 | $18.2000 |
| Purchase | 9/24/2021 | 100 | $18.6600 |
| Purchase | 9/24/2021 | 100 | $18.6809 |
| Purchase | 9/24/2021 | 100 | $18.6809 |
| Purchase | 9/24/2021 | 100 | $18.6883 |
| Purchase | 9/24/2021 | 100 | $18.6900 |
| Purchase | 9/24/2021 | 100 | $18.6900 |
| Purchase | 9/24/2021 | 100 | $18.8800 |
| Purchase | 9/24/2021 | 100 | $18.9214 |
| Purchase | 9/24/2021 | 100 | $18.9214 |
| Purchase | 9/24/2021 | 2,000 | $19.2500 |
| Purchase | 9/24/2021 | 500 | $18.8700 |
| Purchase | 9/24/2021 | 500 | $18.9299 |
| Purchase | 9/27/2021 | 1,000 | $19.3550 |
| Purchase | 9/28/2021 | 100 | $19.0100 |
| Purchase | 9/28/2021 | 2,000 | $19.2200 |
| Purchase | 9/28/2021 | 801 | $19.0100 |
| Purchase | 9/29/2021 | 100 | $18.0000 |
| Purchase | 9/29/2021 | 100 | $18.0500 |
| Purchase | 9/29/2021 | 100 | $18.1000 |
| Purchase | 9/29/2021 | 100 | $18.1500 |
| Purchase | 9/29/2021 | 100 | $18.1800 |
| Purchase | 9/29/2021 | 100 | $18.2600 |
| Purchase | 9/29/2021 | 100 | $18.2999 |
| Purchase | 9/29/2021 | 100 | $18.4599 |
| Purchase | 9/29/2021 | 1,000 | $18.6100 |
| Purchase | 9/29/2021 | 1,000 | $18.7700 |
| Purchase | 9/29/2021 | 1,000 | $18.7724 |
| Purchase | 9/29/2021 | 272 | $18.2800 |
| Purchase | 9/29/2021 | 300 | $18.3000 |
| Purchase | 9/29/2021 | 300 | $18.4799 |
| Purchase | 9/29/2021 | 400 | $18.4616 |
| Purchase | 9/29/2021 | 50 | $17.9500 |
| Purchase | 10/1/2021 | 100 | $17.1599 |
| Purchase | 10/1/2021 | 100 | $17.1645 |
| Purchase | 10/1/2021 | 1,000 | $16.9099 |
| Purchase | 10/6/2021 | 1 | $17.2000 |
| Purchase | 10/6/2021 | 100 | $17.3200 |

Spero Therapeutics, Inc. (SPRO)                                                    Kashif Memon

**List of Purchases and Sales**

| Transaction Type | Date | Number of Shares/Unit | Price Per Share/Unit |
|---|---|---|---|
| Purchase | 10/6/2021 | 100 | $17.3800 |
| Purchase | 10/6/2021 | 100 | $17.4050 |
| Purchase | 10/6/2021 | 100 | $17.4299 |
| Purchase | 10/6/2021 | 100 | $17.5100 |
| Purchase | 10/6/2021 | 100 | $17.5700 |
| Purchase | 10/6/2021 | 1,000 | $17.6185 |
| Purchase | 10/6/2021 | 200 | $17.1999 |
| Purchase | 10/7/2021 | 200 | $16.8100 |
| Purchase | 10/7/2021 | 200 | $16.8100 |
| Purchase | 10/21/2021 | 100 | $16.8200 |
| Purchase | 10/21/2021 | 500 | $16.9200 |
| Purchase | 10/22/2021 | 100 | $16.4100 |
| Purchase | 11/9/2021 | 100 | $16.5299 |
| Purchase | 11/9/2021 | 250 | $16.5099 |
| Purchase | 11/10/2021 | 100 | $16.7000 |
| Purchase | 11/10/2021 | 100 | $16.7911 |
| Purchase | 11/17/2021 | 100 | $16.0000 |
| Purchase | 11/17/2021 | 100 | $16.2200 |
| Purchase | 11/17/2021 | 400 | $16.2000 |
| Purchase | 11/23/2021 | 100 | $15.3699 |
| Purchase | 11/23/2021 | 100 | $15.3699 |
| Purchase | 11/23/2021 | 100 | $15.3699 |
| Purchase | 11/23/2021 | 500 | $15.3585 |
| Purchase | 11/29/2021 | 100 | $15.1500 |
| Purchase | 11/30/2021 | 100 | $14.2000 |
| Purchase | 12/3/2021 | 100 | $13.5099 |
| Purchase | 2/2/2022 | 100 | $11.2900 |
| Purchase | 2/3/2022 | 100 | $10.7073 |
| Purchase | 2/3/2022 | 300 | $10.6690 |
| Purchase | 2/4/2022 | 200 | $10.9900 |
| Purchase | 2/15/2022 | 200 | $9.7999 |
| Purchase | 2/15/2022 | 500 | $9.7883 |
| Purchase | 2/16/2022 | 99 | $9.7200 |
| Purchase | 2/17/2022 | 200 | $9.4900 |
| Purchase | 2/23/2022 | 125 | $8.7000 |
| Purchase | 3/3/2022 | 100 | $8.9499 |
| Purchase | 3/10/2022 | 100 | $8.5599 |
| Purchase | 3/10/2022 | 300 | $8.5599 |
| Purchase | 3/14/2022 | 100 | $7.8689 |
| Purchase | 3/14/2022 | 100 | $7.8799 |
| Purchase | 3/16/2022 | 100 | $7.7599 |
| Purchase | 3/31/2022 | 1,000 | $7.0000 |
| Purchase | 3/31/2022 | 500 | $6.7400 |
| Purchase | 4/1/2022 | 100 | $6.6098 |
| Purchase | 4/1/2022 | 1,000 | $6.6099 |
| Purchase | 4/1/2022 | 1,000 | $6.6699 |
| Purchase | 4/12/2022 | 1,000 | $6.7900 |
| Purchase | 4/14/2022 | 1,000 | $6.3145 |
| Sale | 6/30/2021 | (100) | $16.5100 |
| Sale | 6/30/2021 | (100) | $16.6600 |

Spero Therapeutics, Inc. (SPRO)                                              Kashif Memon

### List of Purchases and Sales

| Transaction Type | Date | Number of Shares/Unit | Price Per Share/Unit |
|---|---|---|---|
| Sale | 6/30/2021 | (196) | $16.6500 |
| Sale | 6/30/2021 | (49) | $16.6900 |
| Sale | 6/30/2021 | (50) | $16.6200 |
| Sale | 6/30/2021 | (50) | $16.6300 |
| Sale | 6/30/2021 | (9,555) | $16.4500 |
| Sale | 9/2/2021 | (2,000) | $18.5900 |
| Sale | 9/2/2021 | (269) | $18.8200 |
| Sale | 9/2/2021 | (68) | $18.5901 |
| Sale | 9/2/2021 | (731) | $18.5400 |
| Sale | 9/9/2021 | (100) | $18.5820 |
| Sale | 9/9/2021 | (100) | $18.5840 |
| Sale | 9/9/2021 | (100) | $18.5860 |
| Sale | 9/9/2021 | (100) | $18.6300 |
| Sale | 9/9/2021 | (105) | $18.6000 |
| Sale | 9/9/2021 | (1,265) | $18.5701 |
| Sale | 9/9/2021 | (300) | $18.5900 |
| Sale | 9/9/2021 | (300) | $18.6200 |
| Sale | 9/9/2021 | (454) | $18.6100 |
| Sale | 9/9/2021 | (4,676) | $18.5700 |
| Sale | 9/9/2021 | (500) | $18.5800 |
| Sale | 9/9/2021 | (53) | $18.9900 |
| Sale | 9/23/2021 | (11) | $19.4900 |
| Sale | 9/24/2021 | (2,309) | $19.5100 |
| Sale | 9/27/2021 | (100) | $19.2525 |
| Sale | 9/27/2021 | (1,000) | $19.2709 |
| Sale | 9/27/2021 | (1,000) | $19.2801 |
| Sale | 9/27/2021 | (1,000) | $19.3601 |
| Sale | 9/27/2021 | (1,000) | $19.4265 |
| Sale | 9/27/2021 | (30) | $19.2800 |
| Sale | 9/27/2021 | (400) | $19.2700 |
| Sale | 9/27/2021 | (480) | $19.2600 |
| Sale | 9/27/2021 | (66) | $19.3000 |
| Sale | 9/27/2021 | (924) | $19.2500 |
| Sale | 9/28/2021 | (1,000) | $19.5100 |
| Sale | 9/28/2021 | (1,000) | $19.5900 |
| Sale | 9/28/2021 | (1,000) | $19.6600 |
| Sale | 9/28/2021 | (2,000) | $19.4700 |
| Sale | 10/5/2021 | (500) | $18.7800 |